# IN THE COURT OF APPEALS OF IOWA

No. 24-0175
Filed July 2, 2025

**IN THE MATTER OF THE GUARDIANSHIP OF E.D. and J.C.**

**T.D.,**

   Mother-Appellant.
_____

   Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.


   A mother appeals a juvenile court order establishing a guardianship for her minor children.  **AFFIRMED.**


   Sandra C. Johnson of Flanagan Law Group, PLLC, Des Moines, and Heidi Miller (until withdrawal) of The Law Office of Heidi Miller, Pleasantville, for appellant mother.

   T.J., Ankeny, self-represented appellee.

   M.G., Des Moines, self-represented appellee.

   Annie Von Gillern of van Gillern Law Firm, PLC, Urbandale, attorney for minor child E.D.

   Charlotte Sucik of Abendroth & Russell Law Firm, Urbandale, attorney for minor child J.C.


   Considered without oral argument by Ahlers, P.J., Sandy, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

The mother of E.D., born in 2008, and J.C., born in 2010, appeals from a juvenile court order establishing a guardianship over the children. The mother claims the statutory requirements for the appointment of a guardian have not been met. Because there is clear and convincing evidence the mother demonstrated a lack of consistent parental participation in the children's lives, we affirm.

## I.      Background Facts and Proceedings

In December 2020, the mother left her children, then ten and twelve years old, with the children's maternal grandmother, T.J., and maternal great-grandmother, M.G., for what was supposed to be "four weeks."[1] The mother lived in Arizona and then in Georgia, but she did not return to Iowa. In February 2023, T.J. and M.G. petitioned to be appointed as guardians of the children on an involuntary basis. The court appointed T.J. and M.G. temporary guardians of the children.

After several continuances, which were granted at the mother's request, the matter came before the court in September. The mother asked for the children to "go back home with me to Georgia where they belong." According to the mother, "[t]hat was me and my children's plan," but the children stayed in Iowa because T.J. and M.G. "bribe[d]" them and now "they don't want to go."

Prior to the hearing, the appointed court visitor issued a report detailing her investigation and recommendation. *See* Iowa Code § 232D.305 (2023). The court visitor interviewed all parties involved. The court visitor's report noted the mother

---

[1] The mother also left her older child, T.C., with T.J. and M.G. T.C. is now an adult and not at issue in this proceeding.

had not "made much of an effort to come to Iowa to visit nor has she offered to bring the boys to Georgia to visit her home there" and "[i]t appears her interest in having them come to Georgia to live with her was sparked by the filing of the guardianship petitions." The court visitor observed the mother's main contact with the children is "by phone," noting she did not even visit the children in June when she came to Iowa to serve a two-day jail sentence for an operating-while-intoxicated conviction. Based on her investigation, the court visitor recommended T.J. and M.G. be appointed the children's guardians, explaining:

> They have the willingness and ability to provide these boys with the love, stability and support that will enable them to be successful young men. The boys trust and love their grandma and great grandma and know they can rely on them to meet their needs. They are stable and steadfast. Although the mother undoubtedly loves her sons, she has not shown that she is stable and able to adequately provide for their daily care. Reported daily phone contact is not the same as caring for these two young men day in and day out. Her decisions have not shown that she can place their needs above her own.

The children's attorneys similarly reported the children did not want to go to Georgia to live with the mother. Specifically, E.D.'s attorney noted concerns about the mother's dishonesty, lack of responsibility or attention to the children, and prioritizing her boyfriend over being a mother. The attorney opined a guardianship should be established with T.J. and M.G.

In a detailed order, the court found clear and convincing evidence supported the need for a guardianship:

> Overall, the holiday that [the mother] has taken from parenting over the last nearly three years, but certainly since January 2023, leads the Court to find that clear and convincing evidence exists that there has been both a de facto guardianship for [E.D. and J.C.] since at least early 2023 and that there has been a demonstrated lack of

consistent parental participation by [the mother] in the lives of [E.D. and J.C.].

The court established a guardianship under Iowa Code section 232D.204(1),[2] appointing T.J. and M.G. co-guardians of the children.[3]  The mother appeals.

## II.  Standard of Review

"Our standard of review of the establishment of a guardianship of a minor is de novo.  We give weight to the juvenile court's factual findings, but we are not bound by them."  *In re Guardianship of K.E.*, No. 23-1481, 2024 WL 3517877, at *3 (Iowa Ct. App. July 24, 2024) (internal citations omitted).

## III.  Analysis

The mother raises one issue on appeal, claiming the court "erroneously found [she] demonstrated a lack of parental participation in the life of her children." The relevant statute provides:

> 1. The court may appoint a guardian for a minor without the consent of the parent or parents having legal custody of the minor if the court finds by clear and convincing evidence all of the following:
> a. There is a person serving as a de facto guardian of the minor.
> b. There has been a demonstrated lack of consistent parental participation in the life of the minor by the parent.  In determining whether a parent has demonstrated a lack of consistent participation in the minor's life, the court may consider all of the following:
> (1) The intent of the parent in placing the custody, care, and supervision of the minor with the person petitioning as a de facto guardian and the facts and circumstances regarding such placement.

---

[2] Although the court's judgment appointed the guardians "pursuant to Iowa Code 232D.204(1) and (2)," in its conclusions of law, the court stated: "[T]he court has two alternatives where it may grant a petition.  The Court finds the most applicable provision to be Iowa Code 232D.204(1) given the facts of this case."

[3] The court further found "clear and convincing evidence exists that both [the children's fathers] would be unwilling or unable to exercise the powers the Court would grant to an appointed guardian and that appointment of a guardian in in the children's best interests."

> (2) The amount of communication and visitation of the parent with the minor during the alleged de facto guardianship.
>
> (3) Any refusal of the parent to comply with conditions for retaining custody of the minor set forth in any previous court orders.

Iowa Code § 232D.204(1).

The mother's claim implicates paragraph (b).[4]  To support it, she argues, "Any lack of parental participation on [her] part was caused of the interference of the co-guardians and their speaking negatively regarding [her] and the move to Georgia."

To the contrary, the record establishes T.J. and M.G. extensively supported the mother's relationship with the children.  True, by 2023, the grandmothers believed the children should stay in Iowa, but only because the children's lives were established there.  The children's attorneys and the court visitor agreed.  *See In re B.B.*, No. 21-0992, 2022 WL 523325, at *4 (Iowa Ct. App. Feb. 22, 2022) ("We must consider the child's immediate and long-range best interests.  The [guardian ad litem] opined staying with [the maternal aunt] was in the child's best interests, where [the child] could finish her high school years and 'be a kid.'  We agree . . . .").  The record is also replete with concerns whether the mother could meet the basic, daily responsibilities of raising these children.  Aside from medical, educational, and housing needs,[5] the children were very active in athletics, including club sports teams.  For years, the grandmothers had signed them up for

---

[4] She acknowledges, "It is undisputed that M.G. has served as a de facto guardian for the minor children.  From [the mother's] own testimony, the children have lived with M.G. from December 2020 to present."  *See id*. § 232D.204(1)(a).

[5] During the time the children lived with the mother in Arizona in 2019 and 2020, the family was kicked out of their home with an aunt and uncle, and the children had problems getting to school.  The mother acknowledged things did not go well for the children in Arizona while under her care.

teams, taken them to practices, purchased their equipment, and attended their competitions. We do not find the grandmothers' efforts "undermine proof of the mother's failure to consistently participate in parenting." *In re Guardianship of L.W.*, No. 23-1725, 2024 WL 3688590, at *3 (Iowa Ct. App. Aug. 7, 2024) (rejecting a claim the guardian "made it difficult to be involved in the child's life").

We further observe the court repeatedly found the mother's testimony had "very little credibility." We defer to the court's finding, *see id*. at *1, and upon our own independent review of the record, we concur there are many discrepancies in the mother's testimony, which ultimately discredit her claim.

We agree with the juvenile court that the mother demonstrated a lack of parental participation in the life of her children and paragraph 232D.204(1)(b) was proved by clear and convincing evidence. We affirm the court's order establishing a guardianship.

**AFFIRMED.**